IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

GLORIA ANN PERKINS,       *
                           *
    Plaintiff,          *
                           *
vs.                     *     CIVIL ACTION 11-00293-B
                           *
MICHAEL J. ASTRUE,      *
Commissioner of Social Security,*
                           *
    Defendant.         *

<u>ORDER</u>

Plaintiff Gloria Ann Perkins ("Plaintiff" or "Perkins") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 <u>et seq.</u>, and 1381 <u>et seq.</u> On April 4, 2012, the parties consented to have the undersigned conduct any and all proceedings in this case, and waived oral argument. (Docs. 17, 18).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636 (c). (Doc. 20). Upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner is **REVERSED and REMANDED.**

## I.   **Procedural History**

Plaintiff protectively filed applications for disability income benefits and supplemental security income benefits on February 4, 2008. (Tr. 128-35).  In her applications, Plaintiff alleges disability since January 18, 2008 due to high blood pressure, a blood clot in the left leg, arthritis, and "severe pain in body."  (Id. at 143, 148).  Plaintiff's applications were denied initially (Id. at 74-78), and she timely filed a Request for Hearing  (Id. at 79).  On September 28, 2009, Administrative Law Judge Geoffrey Casher (hereinafter "ALJ") held an administrative hearing, which was attended by Plaintiff, her attorney, and a vocational expert ("VE").  (Tr. 39-69).  On December 7, 2009, the ALJ issued an unfavorable decision wherein he determined that Plaintiff is not disabled.  (Tr. 19-35). Plaintiff's request for review was denied by the Appeals Council ("AC") on May 2, 2011.  (Id. at 1-6).  The ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981.  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  __Issues on Appeal__[1]

    A.    Whether substantial evidence supports the ALJ's RFC assessment.

    B.    Whether the ALJ erred in failing to develop the record by not ordering a psychological consultative examination.

## III. __Background__

Plaintiff was born on July 24, 1975, and was 34 years old at the time of the administrative hearing.  (Tr. 70, 85, 119). Plaintiff testified that she left school in the ninth grade due to pregnancy.  (Id. at 44).  Plaintiff has past relevant work ("PRW") as a presser, laundry worker, and gas station attendant. (Id. at 44-46, 149).  Plaintiff testified that she has constant pain in her lower back for which she takes pain medications and steroids, pain in both her legs, possibly as a result of diabetes, a blood clot in her leg that was resolved with medication, high blood pressure, recurrent headaches, and depression. (Id. at 46-51).

With respect to her daily activities, Plaintiff testified that she lives with her father and her three children.

---

[1] While Plaintiff argues that the ALJ erred because he did not consider the effect of her obesity on her impairments, she has not developed this argument, or set forth any facts in support of her assertion.  Accordingly, this issue is deemed abandoned and is denied as a result. See Flanigan's Enters., Inc. v. Fulton County, Ga., 242 F. 3d 976, 987 n.16 (11th Cir. 2001)(party waives issue not developed in its briefs.)

According to Plaintiff, her two oldest children perform all the household chores, including laundry.  Her father does the grocery shopping, and she cooks food that can be prepared "fast."  Plaintiff reported that she attends church, but does not attend her children's school activities.  Additionally, Plaintiff testified that she reads, does puzzles, watches some t.v., and assists her children with their school work. (Id. at 52-55).

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.

_____

[2] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation

process for determining if a claimant has proven her disability.[3]
20 C.F.R. §§ 404.1520, 416.920.

In the case sub judice, the ALJ determined that Plaintiff
met the insured status requirements of the Social Security Act
through December 31, 2011, and that she has not engaged in
substantial gainful activity since her alleged onset date. (Tr.
22, 24).  The ALJ concluded that while Plaintiff has the severe
impairments of major depressive disorder with psychotic

---

[3] The claimant must first prove that he or she has not
engaged in substantial gainful activity.  The second step
requires the claimant to prove that he or she has a severe
impairment or combination of impairments. If, at the third step,
the claimant proves that the impairment or combination of
impairments meets or equals a listed impairment, then the
claimant is automatically found disabled regardless of age,
education, or work experience.  If the claimant cannot prevail
at the third step, he or she must proceed to the fourth step
where the claimant must prove an inability to perform their past
relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir.
1986).  In evaluating whether the claimant has met this burden,
the examiner must consider the following four factors: (1)
objective medical facts and clinical findings; (2) diagnoses of
examining physicians; (3) evidence of pain; (4) the claimant's
age, education and work history.  Id. at 1005.  Once a claimant
meets this burden, it becomes the Commissioner's burden to prove
at the fifth step that the claimant is capable of engaging in
another kind of substantial gainful employment which exists in
significant numbers in the national economy, given the
claimant's residual functional capacity, age, education, and
work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).
If the Commissioner can demonstrate that there are such jobs the
claimant can perform, the claimant must prove inability to
perform those jobs in order to be found disabled.  Jones v.
Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v.
Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v.
Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

features, neuropathy, chronic back pain, and obesity, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 24). The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work. According to the ALJ, Plaintiff can lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently and can stand and/or walk about six hours in an eight-hour workday but requires a sit/stand option at will. The ALJ further determined that Plaintiff can frequently use her bilateral lower extremity for the performance of pushing and/or pulling movements, but that she is limited to occasional use of her bilateral feet for foot pedals. Additionally, the ALJ determined that Plaintiff can frequently climb, bend, balance, stoop, kneel, crouch, or crawl and can frequently climb ramps and/or stairs, but that she can never climb ladders, ropes or scaffolds. He also found that Plaintiff is prohibited from work involving exposure to extreme heat and/or cold, vibration, and noise, as well work involving unprotected heights, dangerous machinery, or uneven surfaces. The ALJ also limited Plaintiff to simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few work

place changes. The ALJ also found that Plaintiff is unable to work at a production pace. (Id. at 25-26).

The ALJ utilized the services of a vocational expert and determined that Plaintiff is unable to perform her PRW as a presser or laborer but that she is capable of performing her PRW as a gas station clerk. (Id. at 30). The ALJ further found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cloth folder, marker, and checker. Thus, he concluded that Plaintiff is not disabled. (Id. at 30-31).

The relevant evidence[4] of record includes notes from Bryan Whitfield Memorial Hospital dated May 6, 2007. On that date, Plaintiff presented to the emergency department with complaints of moderate side and back pain and dizziness. On physical exam, Plaintiff appeared normal and stable, but in mild distress. Examination of her back revealed tender paraspinal muscles and muscle spasm. Plaintiff was diagnosed with acute lumbosacral strain and was discharged in fair, stable condition. At

---

[4] While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date of January 18, 2008, only that evidence which is relevant to the issues before the Court is included in the summary.

discharge, she was provided nine Toradol[5] pills and advised to ice her back, not to lift or strain, and to take Motrin or Aleve for pain. (Id. at 196-204).

The record also includes a physical therapy evaluation from Bryan Whitfield Memorial Hospital dated October 2007.  Plaintiff received physical therapy on at least October 9, October 10, and October 11, 2007 for treatment of mid back pain. (Id. at 184). The therapy consisted of 15 minutes of electric stimulation, 20 minutes of therapeutic exercise, and 15 minutes of hot/cold application. (Id. at 185-88).

The record also reflects that Plaintiff was routinely treated by Dr. Judy Cooke Travis from January 1998 through January 2008. (Tr. 216-232). During March, May and October 2007 visits, Plaintiff reported a number of ailments including back pain, dizziness, and lower abdominal pain. She was prescribed Cephadyn[6] and doxycycline hyclate.[7] (Id. at 218-221). On January

---

[5] Toradol is a nonsteroidal anti-inflammatory drug (NSAIDs) that works by reducing hormones that cause inflammation and pain in the body. It is used short-term (5 days or less) to treat moderate to severe pain. See http://www.drugs.com/toradol.html (last visited Jan. 20, 2012).

[6] Cephadyn is the combination of acetaminophen (pain reliever and fever reducer) and butalbital (a barbiturate that relaxes muscle contractions) and is used to treat tension headaches.  See http://www.drugs.com/mtm/cephadyn.html (last visited Jan. 20, 2012).

24, 2008, Plaintiff reported low back pain that comes and goes, and that her pain medication was not helping much. (Id. at 217).

Plaintiff was treated at Whatley Health Services during March and April 2008 for back pain, shoulder pain and a tingling sensation in her legs. On examination, mild tenderness in the lumbar region was observed, and Plaintiff was prescribed Lortab[8]. (Id. at 235-236).

On March 27, 2008, Huey Kidd, D.O. (hereinafter "Dr. Kidd") conducted a consultative examination at the Agency's request. (Id. at 237-39). On examination, Dr. Kidd noted Plaintiff was obese, alert, pleasant, and interactive. He noted that she had full range of motion and 5/5 strength of her upper and lowers extremities. Plaintiff was able to heel walk, toe walk, squat, and stand. Dr. Kidd noted Plaintiff could bend and touch her toes but that doing so took a lot of effort for her. Plaintiff ambulated without difficulty, and her straight leg raises were negative. Testing of Plaintiff's deep tendon reflexes was 2/4 throughout. In addition to a physical examination, Dr. Kidd

_____

[7] Doxycycline Hyclate is a tetracycline antibiotic used to treat certain bacterial infections. See http://www.drugs .com/cdi/doxycycline-hyclate.html (last visited Jan. 20, 2012).

[8] Lortab is a narcotic pain reliever used to relieve moderate to severe pain. See http://www.drugs.com/lortab. html (last visited Jan. 24, 2012).

reviewed an x-ray of Plaintiff's lumber spine and noted that it was normal. The x-ray showed a normal curvature of the lumbar spine and that the disc spaces were well preserved. Dr. Kidd assessed Plaintiff with low back pain. (Id. at 238).

The record reflects that Plaintiff was treated by Maurice J. Fitz-Gerald, M.D. (hereinafter "Dr. Fitz-Gerald") from September 2008 through July 2009 for headaches and abdominal pain. (Id. at 258-316). During a September 10, 2008 visit, Plaintiff reported migraines, chest pain, back pain, and pain in her right arm and leg. On examination, Plaintiff's extremities were symmetrical with good range of motion, she had no pedal edema, and she had a stable gait. Dr. Fitz-Gerald impression was depression and possible kidney infection. "Review of systems otherwise non-contributory." (Id. at 301). Plaintiff was prescribed Garamycin IM[9] and Cipro[10], and given Imitrex[11], and directed to return in two weeks. (Id. at 300-02).

---

[9] Garamycin is an antibiotic used to treat severe or serious bacterial infections. See http://www.drugs.com/mtm/garamycin.html (last visited Jan. 24, 2012).

[10] Ciprofloxacin ("Cipro") is used to treat or prevent certain infections caused by bacteria. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000878/ (last visited Jan. 24, 2012).

[11] Imitrex is used to treat migraine headaches by narrowing blood vessels around the brain. See http://www.drugs.com/imitrex.html (last visited Jan. 24, 2012).

A CT of Plaintiff's head, taken on September 11, 2008, was negative. No intraparenchymal hemorrhage, visualized mass effect, or midline shift were reflected on the CT. In addition, the ventricles and cisterns were normal. The visualized sinuses were clear, and no acute bony abnormalities were present. (Id. at 331-35).

During an October 6, 2008 examination of Plaintiff, Dr. Fitz-Gerald noted a marked paravertebral muscles spasm and tenderness over L4 and L5, and that Plaintiff's extremities were symmetrical with good range of motion. Dr. Fitz-Gerald prescribed Lortab, Soma[12], and a burst of steroids, and referred Plaintiff for a CT scan of her back. (Id. at 293-94). A CT scan of Plaintiff's lumbar spine was performed on October 9, 2008, and revealed a "[m]ild diffuse disc bulge at L5-S1". The scan was "[n]egative for fracture, dislocation or anterior listhesis" and "[n]o significant disc space narrowing" was noted. (Id. at 336-41).

During a January 20, 2009 visit, Plaintiff reported a migraine headache that was "worse than normal." Dr. Fitz-Gerald

---

[12] Soma is a muscle relaxant, is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. See http://www.ncbi.nlm.nih.gov/pubmedhealth/ PMH0000717/ (last visited Jan. 24, 2012).

diagnosed uncontrolled migraines and depression and referred Plaintiff for a second CT scan. (Id. at 279-80). Like the first head CT scan, the second CT scan on January 21, 2009 was negative and no intraparenchymal hemorrhage, visualized mass effect or midline shift were found. The ventricles and cisterns were normal, the visualized sinuses were clear, and no acute bony abnormalities were present. (Id. at 326-30).

The treatment notes reflect that Plaintiff was treated by Dr. Fitz-Gerald in March 2009 for pain on her right side, coughing, and pain in the back of her legs. A chest x-ray showed increased bronchovesicular markings, and a CBC test showed evidence of infection. Plaintiff was diagnosed with pharyngitis and pneumonitis, depression and vascular headaches and was prescribed Rocephin, Toradol, Keflex, Lortab and Darvocet.(Id. at 274-75).

During a May 14, 2009 visit, Dr. Fitz-Gerald noted that Plaintiff had good range of motion in her extremities, a stable gait and no pedal edema.  He also noted that Plaintiff was "also a little schizophrenic and she is on Seroquel."[13]  She was advised to continue her same treatment program. (Id. at 268-70).

---

[13] Seroquel is used to treat schizophrenia and bipolar disorder (manic depression) in adults and children who are at least 10 years old. See http://www.drugs.com/seroquel.html. (Last visited Jan. 24, 2012).

The May 26, 2009 treatment notes reflect that Plaintiff had broken out in a rash and had migraines. Plaintiff was placed on a short burst of steroids, Periactin[14], and given an 8mg Decadron[15] shot. (Id. at 267). The June 16, 2007 treatment notes reflect that Plaintiff had a rash on her leg that was very tender. Dr. Fitz-Gerald attributed it to a drug reaction, and discontinued all of her medications except periactin and prednisone. (Id. at 263). In the treatment notes dated July 17, 2009, Dr. Fitz-Gerald noted as follows: "No masses or tenderness. Extremities symmetrical with good ROM. . . Gait stable. . . She has had an MRI of her back with some bulging discs but not much. I think this is a neuropathy." (Id. at

---

[14] Periactin relieves red, irritated, itchy, watery eyes; sneezing; and runny nose caused by allergies, irritants in the air, and hay fever. See http://www.ncbi.nlm.nih.gov/ pubmedhealth/PMH0000705/ (last visited Jan. 24, 2012).

[15] Decadron is a corticosteroid, similar to a natural hormone produced by the adrenal glands. It relieves inflammation (swelling, heat, redness, and pain) and is used to treat certain forms of arthritis; skin, blood, kidney, eye, thyroid, and intestinal disorders (e.g., colitis); severe allergies; and asthma. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000773/ (last visited Jan. 24, 2012).

259).   Plaintiff was prescribed Darvocet,[16] Lortab, Lisinopril, and Lyrica.[17]   (Id. at 258-59).

The record includes treatment notes from West Alabama Mental Health Center. (Id. at 241-57).  Notes dated January 20, 2009 reflect that Plaintiff was treated in late 2008 and was prescribed Seroquel after reporting hallucinations. According to the notes, Plaintiff's hallucinations ended after beginning the medication therapy. (Id. at 256-7). Plaintiff was diagnosed with recurrent major depressive disorder, severe with psychotic features. (Id.)   Plaintiff was treated again on January 28, 2009.  On exam, her affect was normal.  She was oriented times four.  She was calm, and her sleep and appetite were noted as good.  Treatment notes indicate Plaintiff was doing better despite the death of her grandmother. Plaintiff reported she works on puzzles for relaxation, and the therapist opined that Plaintiff "appears to be managing well."  (Id. at 249).

---

[16] Darvocet is used to relieve mild to moderate pain with or without fever.  See http://www.drugs.com/darvocet.html (last visited Jan. 24, 2012).

[17] Lyrica is used to relieve neuropathic pain (pain from damaged nerves) that can occur in the arms, hands, fingers, legs, feet, or toes of a person who has diabetes or in the area of a rash if a person has had shingles.  See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000327/ (last visited Jan. 24, 2012).

During a February 25, 2009 visit, Plaintiff denied hallucinations and reported that her sleep and appetite were good. The therapist noted Plaintiff was compliant with her medication and that she denied any side effects. In an individual session, plaintiff was conversational and friendly. She was directed to return in one month. (Id. at 248).

Plaintiff reported, in a visit on April 2, 2009, that she was experiencing high levels of stress involving her children. She further reported trouble sleeping and difficulty keeping food down. (Id. at 247). On her next therapy visit on May 5, 2009, Plaintiff reported continued stress stemming from her children. She indicated however that she was "doing well" and that her sleep and appetite were good. She was directed to continue with relaxation activities. (Id. at 246).

During her June 3, 2009 visit, Plaintiff reported that she was doing well and that her sleep and appetite were good. According to the treatment notes, Plaintiff's affect was normal, she "appear[ed] stable", her thinking was organized, and she "denie[d] any significant problems." (Id. at 245). In a treatment plan dated June 9, 2009, Plaintiff's GAF score was listed as 50. Her diagnoses were major depressive disorder D/O, severe with psychotic features. The Treatment Plan reflects that it was designed to address Plaintiff's depression,

hallucinations, anxiety, and suspiciousness. Plaintiff was directed to attend individual counseling and to engage in stress management, symptom/illness management, and coping skills monthly. She was directed to have medication monitoring and physician assessment/treatment once quarterly. (Id. at 241-42).

During a therapy session on July 14, 2009, Plaintiff had a normal affect, and reported her sleep and appetite were fair. She relayed to the therapist that she was having higher stress and higher anger but did not know why. She also indicated that she was having issues with her boyfriend, that she was managing her stress adequately, and overall, she was doing okay. (Id. at 244). During her August 12, 2009 treatment session, Plaintiff reported progress and improvement. According to Plaintiff, Vistaril[18] helped her have less anxiety and temper outbursts. (Id. at 243).

---

[18] Vistaril is used to relieve the itching caused by allergies and to control the nausea and vomiting caused by various conditions, including motion sickness. It is also used for anxiety and to treat the symptoms of alcohol withdrawal. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000796/ (last visited Jan. 24, 2012).

**Whether the ALJ erred in failing to develop the record by not ordering a psychological consultative examination.[19]**

Plaintiff argues that the ALJ erred in failing to develop a full and fair record with regard to her mental impairment. According to Plaintiff, although the ALJ found that she has major depressive disorder with psychotic feature and found it to be severe, he erred in failing to order a psychological consultative examination in order to evaluate any limitations stemming from Plaintiff's mental impairment for inclusion in his RFC determination. (Doc. 14 at 8-9). The Commissioner counters that it is Plaintiff's burden to prove that she is disabled and to introduce evidence to support her application. According to the Commissioner, the ALJ need develop the record only if the record shows evidentiary gaps that result in unfairness or clear prejudice, and no such gaps are reflected here. The Commissioner also asserts that nothing in the record suggests Plaintiff's

---

[19] Because the Court determines that the decision of the Commissioner should be reversed and remanded for further proceedings based on the Plaintiff's second claim, there is no need for the Court to address Plaintiff's first claim. See Robinson v. Massanari, 176 F. Supp. 2d 1278, 1280 and n.2 (S.D. Ala. 2001); cf., Pendley v. Heckler, 767 F. 2d 1561, 1563 (11th Cir. 1985)("Because the 'misuse of the expert testimony alone warrants reversal' we do not consider the appellant's other claims.") (citations omitted).

mental limitations were any greater than those found by the ALJ (Doc. 15 at 14-15).

An administrative hearing before an ALJ is not adversarial in nature. Thus, it is well-established that "the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). This duty to develop the record exists even when the claimant is represented by counsel. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). In fulfilling the duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988) (the ALJ is not required to order a consultative examination and has discretion to order such an exam only when necessary); see also Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007)(rejecting claim that ALJ reversibly erred in failing to order an additional consultative examination because no physician had recommended an additional consultation and the record contained sufficient evidence to permit the ALJ's RFC determination).   While the ALJ is responsible for making every reasonable effort to obtain from the claimant's treating physician(s) all the medical evidence necessary to make a determination as to disability, it is the

claimant's burden to prove he is disabled and to produce evidence in support of her claim. See Ellison, 355 F. 3d at 1276; 20 C.F.R. § 416.912(a) and (c).[20]  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

In McCall v. Bowen, 846 F.2d 1317, 1320 (llth Cir. 1988), the Eleventh Circuit held that a plaintiff's testimony regarding problems with her memory and nerves, and her treating physicians' suggestions that she might have psychological problems might well be enough to require the appointment of a psychiatrist or psychologist under the requirements of § 421(h). The court found that since the case was being remanded on other grounds, the applicability of § 421 should also be considered on remand.

Later, in Sneed v. Barnhart, 214 Fed. Appx. 883 (llth Cir. 2006), a panel of the Eleventh Circuit observed as follows:

---

[20] The regulations provide circumstances under which an ALJ will usually order a consultative evaluation: when additional evidence is needed and is not included in the medical record; when evidence from a treating source cannot be obtained; when there exists conflict, inconsistency, ambiguity or insufficiency in the evidence that cannot be resolved by recontacting a treating source; when there is an indication that Plaintiff's condition has changed in a way that will likely affect Plaintiff's ability to work, but such change is not reflected in the record, and when necessary to secure highly technical or specialized medical evidence that is not available from a treating source.  20 C.F.R. §§ 404.1519a(b), 416.919a(b).

In any case where there is evidence
that indicates the existence of a mental
impairment, the Commissioner may determine
that the claimant is not under a disability,
only if the Commissioner has made "every
reasonable effort to obtain the opinion of a
qualified psychiatrist or psychologist."
*McCall v. Bowen,* 846 F.2d 1317, 1320 (11th
Cir. 1988)(quoting 42 U.S.C. § 421(h).
*McCall* interprets § 421(h), which requires
an ALJ to order a psychological consultation
where there is evidence of a mental
impairment. The Third Circuit has held that
the normal requirement to order a
psychiatric consult pursuant to § 421 (h)
does not apply to cases falling under the
limited exception found in § 421(d), or
cases heard by an ALJ. <u>Plummer v. Apfel</u>,
186 F.3d 422, 433 (3d Cir. 1999) (holding
that § 421(h) consultation requirement
applies only to cases falling under §
421(a), (c), (g), (i) at the initial and
reconsideration levels). In such cases, an
ALJ has regulatory flexibility to evaluate
mental impairments to determine their
severity. <u>Id.</u>; *see also* 20 C.F.R. §
<u>404.1520a</u> (evaluation of mental
impairments).

<u>Id.</u> at 886.

The Court in <u>Sneed</u> went on to reject the plaintiff's
assertion that the ALJ erred because he did not consider the
effects of a doctor's opinions regarding her marked restrictions
in the ability to respond to customary work pressures or to
maintain attention, concentration or pace for at least two
hours. In rejecting the plaintiff's assertion, the court noted
that the evidence relied upon by the plaintiff was presented to
the appeals council *after* it had denied review, and that the

doctor had not rendered his opinions until four months *after* the ALJ's decision. Thus, the Court concluded that it was unclear how the ALJ could have failed to consider evidence and order a consultative examination based on evidence that was never presented to him. The Court further noted that the evidence that was before the ALJ consisted of the plaintiff's testimony that she was tearful, and that she was on Zoloft, an antidepressant, and medical records which indicated that the plaintiff was also treated with Xanax and that she had a "fair prognosis" from her diagnosis of depression. The Eleventh Circuit found that "[t]hese brief references to depression, which was apparently being treated with medication, were insufficient to trigger the ALJ's duty to obtain a psychological consultative report." Id. In this case, the ALJ found as follows:

> In activities of daily living, the claimant has moderate restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which has been of extended duration. . . . With regard to the claimant's mental impairment, I find that the claimant has major depressive disorder with psychotic features. I find that the claimant has a severe limitation, but find that it does not rise to a severity to be disabling. Progress notes indicated that the claimant has experienced improvement with her medications and she, in fact, testified at

the hearing that she was no longer hearing
voices. Progress notes from the treating
psychiatrist indicated improvement with no
hallucinations and no delusions. I
acknowledge that the claimant was assigned a
Global Assessment of Functioning of 50 in
June 2009. However, in July 2009, Ms.
Perkins reported she was sleeping well with
decreased anxiety and decreased temper
outbursts. I find that the claimant is well
maintained on her medications and appears to
be improving with continuing therapy and
treatment. To give the claimant the benefit
of doubt, I have limited her to unskilled
work requiring only simple routine tasks
with few work place changes and no work at
production rate pace.

(Tr. at 25, 29).

The undersigned finds that unlike the plaintiff in <u>Sneed</u>,
the plaintiff in the instant case has a documented history of
regular and extended treatment for major depression d/o severe
with psychotic features such as depression, hallucinations,
anxiety and suspiciousness. Further, while the medical records
reflect that Plaintiff responded well to medication, there is
also evidence that her symptoms waxed and waned. At the
hearing, she reported that she was no longer hearing voices, but
that she was still experiencing nightmares that caused her to
scream out at night. Further, the treatment notes reflect that
at times, Plaintiff reported that her sleep and appetite were
good, and that she was doing well, and on other visits, she
indicated she was experiencing high levels of stress and anger,

and that her sleep and appetite were fair. In June 2009, Plaintiff's highest GAF for the past year was deemed to be "50."[21]   Further, the ALJ's listing of mild and moderate limitations flowing from Plaintiff's mental impairments does not include any facts or evidence he relied upon to formulate the limitations. Thus, it is not clear how he arrived at these mental limitations. Accordingly, the undersigned finds that given the evidence regarding Plaintiff's regular and extended treatment for major depression d/o severe with psychotic features coupled with evidence of her limited education, the ALJ erred in not ordering a mental health consultative assessment in order to determine the resulting mental functional limitations. See Stewart v. Astrue, 551 F.Supp. 2d 1308, 1317 (N.D. Fla. 2008)(where the plaintiff received psychotropic medications for an extended period of time and had very limited educational

---

[21] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum. A GAF score of 31-40 suggests that behavior is considerably influenced by delusions or hallucinations or serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends). A GAF score of 41-50 indicates serious symptoms indicative of antisocial behavior (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious social dysfunction (e.g., no friends, unable to keep a job).

skills, case should be remanded to obtain a mental health consultative assessment and intelligence testing).

**V.    <u>Conclusion</u>**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income, be **REVERSED** and **REMANDED**.

**DONE** this **27th** day of **September, 2012**.

/s/ SONJA F. BIVINS<br>
UNITED STATES MAGISTRATE JUDGE